```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DORY LOPEZ,                                            :
                                                      :
                                     Plaintiff,       :
                                                      :          1:15-cv-9695-GHW
           -v -                                       :
                                                      :          MEMORANDUM OPINION
THE UNITED STATES OF AMERICA and                      :              AND ORDER
LIMPIEX CLEANING SERVICES, INC.,                      :
                                                      :
                                     Defendants.  :
-------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

       Plaintiff Dory Lopez seeks to hold the United States of America and Limpiex Cleaning

Services, Inc. ("Limpiex") jointly and severally liable for injuries that she allegedly suffered during a

slip-and-fall on a driveway outside of the Smithsonian National Museum of the American Indian.

Limpiex has asserted crossclaims against the United States for common law indemnification and

contribution.  The United States ("the Government") moves pursuant to Fed. R. Civ. P. 12(b)(1) to

dismiss Ms. Lopez's claim against it, as well as Limpiex's crossclaims, for lack of subject matter

jurisdiction.  For the reasons that follow, the Government's motion to dismiss is GRANTED.

I.     **BACKGROUND**[1]

       **A.  Plaintiff's Alleged Accident**

       The United States owns the Alexander Hamilton United States Custom House located at

One Bowling Green, New York, New York ("One Bowling Green").  ECF No. 31, Decl. of James

Smith ("Smith Decl."), Ex. A, at 1.  Through the General Services Administration ("the GSA"), the

United States leases a portion of One Bowling Green to the Smithsonian Institution for use by the

National Museum of the American Indian.  *Id.*

---

[1] In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may refer to evidence outside the
pleadings.  *E.g.*, *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

Ms. Lopez alleges that on March 13, 2015, she was walking along the "sidewalk and/or ramp" adjacent to One Bowling Green—specifically, the portion located at 7 Bridge Street between State Street and Whitehall Street—when she "slipped on a slippery condition of oil, grease, and/or fluid that was running from" the building, fell to the ground, and sustained "serious bodily injuries." ECF No. 36, Third Am. Compl. ("TAC") ¶¶ 21-22, 31-32, 34.  Ms. Lopez further alleges that the "slippery condition originated from, including but not limited to, certain equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities inside of the premises located at One Bowling Green."  TAC ¶ 35.  The Third Amended Complaint describes the location of the alleged incident as a "sidewalk and/or ramp."  TAC ¶ 31.  Photographs of the location submitted to the Government by Ms. Lopez in connection with her administrative claim depict the area as a driveway that extends from a pair of large garage doors to the street.  ECF No. 30, Decl. of Jilliane Jaeger ("Jaeger Decl.") ¶¶ 5-6, Ex. E.





After her alleged fall, Ms. Lopez made a statement to the Federal Protective Service ("FPS"), which prepared and filed an incident report.  Jaeger Decl. ¶ 2; *id.* Ex. A.  According to that report, the "facilities cleaning company, 'Limpiex'" arrived on location after Ms. Lopez's fall and "laid down some oil absorbent material."  *Id.* Ex. A, at 2.

In this action, Ms. Lopez seeks to hold Defendants jointly and severally liable for $2,500,000 in compensatory damages.  TAC ¶¶ 69, 89.

**B.  Procedural History**

On June 11, 2015, the Smithsonian Institution's Office of General Counsel received an administrative claim from Ms. Lopez.  *See* Jaeger Decl., Ex. C.  On August 6, 2015, after informing Ms. Lopez's counsel that the GSA was the appropriate agency to receive her claim, the Smithsonian transferred her claim to the GSA pursuant to 28 C.F.R. § 14.2(b)(1).  *Id.*  The GSA received her transferred claim on August 17, 2015.  Jaeger Decl. ¶ 3; *id.* Exs. C and D.

On December 11, 2015, Ms. Lopez initiated this court action.[2]  ECF. No. 1.  Her initial

---

[2] Pursuant to 28 U.S.C. § 2675(a), an action may not be initiated against the United States for money damages "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  The statute also provides that "[t]he failure of

complaint named as defendants the National Museum of the American Indian and the Smithsonian

Institution. *Id.* On March 3, 2016, Ms. Lopez amended her complaint, this time naming as

defendants the United States and Limpiex Cleaning Services, Inc ("Limpiex"). ECF No. 12, Am.

Compl. Ms. Lopez amended her complaint once again on March 17, 2016, making minor changes

to its factual allegations. ECF No. 21, Second Am. Compl ("SAC"). Ms. Lopez brings her claim

against the United States pursuant to the Federal Tort Claims Act ("the FTCA"), 28 U.S.C. §

1346(b)(1). She alleges that the Court has jurisdiction over her claim against Limpiex based on

diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and the supplemental jurisdiction statute, 28

U.S.C. § 1367(a).

On April 7, 2016, the Government moved to dismiss the Second Amended Complaint for

lack of subject matter jurisdiction. ECF No. 28. Rather than responding to that motion, Ms. Lopez

chose to amend her complaint for a third time. In her Third Amended Complaint, Ms. Lopez added

allegations apparently designed to strengthen her showing that negligence on the part of United

States employees—as distinct from negligence on the part of Limpiex employees—was a cause of

her injuries.[3]

---

an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." *Id.* This administrative exhaustion is "jurisdictional and cannot be waived. Moreover, because the FTCA constitutes a waiver of sovereign immunity, the procedures set forth in Section 2675 must be adhered to strictly." *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983) (citations omitted). Ms. Lopez alleges that "the Smithsonian, the GSA and the United States made a final denial of [her] claim for purposes of 28 U.S.C. § 2675(a)" on or about December 11, 2015—precisely six months after her claim was received by the Smithsonian. TAC ¶ 14. According to the United States, however, Ms. Lopez filed her complaint before the GSA had made a final decision on her claim. Jaeger Decl. ¶ 7. Thus, Ms. Lopez appears to allege that her complaint was ripe due to the Smithsonian's—not the GSA's—failure to render a final decision within six months. The parties have not briefed the issue of why the Smithsonian was not the "appropriate Federal agency" within the meaning of Section 2675(a), nor have they addressed whether the six months of inaction required for a "deemed" final denial starts anew once an administrative claim is transferred from one agency to another. Because other grounds exist for dismissing the claims against the United States for lack of subject matter jurisdiction, the Court declines to reach the question of whether the complaint should be dismissed for failure to exhaust administrative remedies.

[3] For example, while the Second Amended Complaint had already alleged that Ms. Lopez's injuries were "caused as a result of the carelessness, recklessness and negligence of the Defendant, United States, in the inspection, operation, management, maintenance, ownership, repair and control of the certain equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities inside of the premises located at One Bowling Green, New York, New York, 10004," SAC, ¶ 44, the Third Amended Complaint adds the following allegation: "The equipment, appurtenances,

On April 28, 2016, Defendant Limpiex filed an answer to the Second Amended Complaint, in which it also asserted crossclaims against the United States for contractual indemnification, as well as common law indemnification and contribution.  ECF No. 35.  In its answer to the Third Amended Complaint, Limpiex asserts only the common law indemnification and contribution crossclaims.  ECF No. 53, Answer to Third Am. Compl.

On May 16, 2016, the Government filed a motion pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the claim asserted against it in the Third Amended Complaint for lack of subject matter jurisdiction.  ECF No. 49, Mot. to Dismiss.  The Government also moves to dismiss Limpiex's crossclaims.  *Id.*

### C.   The Contract with Limpiex

As noted above, the GSA leases a portion of One Bowling Green to the Smithsonian Institution for use by the National Museum of the American Indian.  Smith Decl. ¶ 5.a; *id.* Ex. A, at 1-79.  Janitorial and custodial services at One Bowling Green are provided by Limpiex pursuant to a contract with the GSA.  *Id.* ¶¶ 3-5.  That contract was in effect on March 13, 2015, the date of Ms. Lopez's alleged injury.  *Id.* Ex. A, at 189-93.

The terms of Limpiex's contract are set forth in a Request for Proposal for "Performance-Based Complete Janitorial Services" at One Bowling Green, Solicitation Number GS-02P-08-PVC-0007.  *Id.* ¶ 5.b; *id.* Ex. A, at 80-184.  Those terms are incorporated by reference into an "Order for Supplies and Services," which is the document issued by the GSA on May 2, 2008 to award the contract to Limpiex.  *Id.* ¶ 5.c; *id.* Ex. A, at 185-88.  For ease of reference, the Court will refer to the terms of the Request for Proposal, as incorporated into the award document, as "the Contract."

paraphernalia, receptacles, vehicles and/or facilities inside of the premises located at One Bowling Green that the aforesaid slippery condition originated from were exclusively under the ownership, control, operation, management, repair and maintenance of the Defendant, United States."  TAC ¶ 36.

### 1.  Allocation of Responsibilities Under the Contract

The Contract makes clear that Limpiex had autonomy in the performance of its tasks. Section B.1 of the Contract provides that "[t]he contractor shall provide all management, supervision, labor, materials, supplies and equipment (except as otherwise provided), and shall plan, schedule, coordinate and assure effective performance of all services described herein." *Id.* Ex. A, at 88.  Section C of the Contract, which sets forth the general specifications of the work to be performed, reiterates that "[t]he contractor shall provide all management, supervision, labor, materials, equipment and supplies necessary to meet all janitorial and related services quality requirements as described herein," and that "[t]he contractor is to determine the optimal work schedule, frequency, resource allocations and performance methods." *Id.* at 92.

Section C.4 provides that "[t]he contractor shall arrange for satisfactory supervision of the contract work" and that "[t]he contractor or one of his supervisors shall be available at all times." *Id.* at 93.  Section C.4 also requires Limpiex to designate an "on-site supervisor" who "has the authority to act for the contractor on a day-to-day basis." *Id.*  Section C.9 requires Limpiex to establish "a complete quality control program (QCP) to assure the requirements of the contract are provided as specified," *id.* at 97-98, and Section E provides that Limpiex is "responsible for the day-to-day inspection and monitoring of all work performed to ensure compliance with the contract requirements." *Id.* at 101.  Under Section H.1, Limpiex is required to maintain liability insurance coverage in the amount of at least $500,000 per occurrence for bodily damage.  *Id.* at 114.

As for the Government's responsibilities, Section C.4 of the Contract provides that "Government direction or supervision of contractor's employees directly or indirectly, shall not be exercised." *Id.* at 93.  Under Section E, "[t]he Government has the right to inspect and test all services called for by the contract . . . .  If any of the services do not conform with contract requirements, the Government may require the Contractor to perform the services again in

conformity with contract requirements." *Id.* at 100.  Section E also provides that "[t]he Contracting

Officer has the overall responsibility for the administration of this contract." *Id.* at 101.  While the

Contracting Officer has the sole authority "to take actions on behalf of the Government to amend,

modify or deviate from the contract terms, conditions, requirements, specifications, details and/or

delivery schedules," the Officer "may delegate certain other responsibilities to his/her authorized

representatives." *Id.*  "Contract Inspectors" are "subordinates of the Contracting Officer's

Representative and are responsible for the day-to-day inspection and monitoring of the contractor's

work," including, but not limited to, "[i]nspecting the work to ensure compliance with the quality

requirements" and "[f]ollowing through to ensure that all defects or omissions are corrected." *Id.* at

101-02.

### 2.  Limpiex's Custodial Duties Under the Contract

The Contract also makes clear that the Government delegated full responsibility for

maintenance and cleaning of the area in which Ms. Lopez allegedly fell to Limpiex.  The scope of

the services that Limpiex was required to perform is set forth in several exhibits to the Contract.

Exhibit 2A, entitled "Custodial Work Quality Requirements," sets forth the scope of the cleaning

and custodial tasks for which Limpiex was responsible.  *Id.* at 146-54.  It provides, in relevant part,

that "loading areas," including "platforms and docks," shall be "clean and free of trash, debris, and

foreign matter," and "free of grease, tar, oil spots, etc." *Id.* at 150.  It also provides that "[g]arages,

[r]amps and [d]riveways" shall be "free of all paper, trash, empty bottles and other discarded

materials.  Grease, tar and oil shall not be allowed to permeate concrete surfaces." *Id.*  Exhibit 2A

also requires Limpiex to keep "[e]xterior [a]reas," including "sidewalks and parking areas," free of

"paper, trash, bottles and other discarded materials." *Id.* at 151.

When weather permits during the months of April through November, Exhibit 2F to the

Contract requires Limpiex to "[w]ash down the exterior of the building below the window sills to

the plaza level and all entrances around the building with a pressurized cleaning apparatus" and wash down the "street level" with a water hose.  *Id.* at 161.  Exhibit 2D requires Limpiex to "[r]emove snow and ice from all entrances, steps and landings, sidewalks, vehicular courts, parking areas and approaches" and to ensure that those areas are "free of snow and ice accumulations" and that "all hazardous conditions due to the weather [are] eliminated."  *Id.* at 159.

Pursuant to Exhibit 2B to the Contract, Limpiex is required to "[f]urnish all necessary labor, equipment and supervision to provide solid waste disposal and/or removal services."  *Id.* at 155.  With respect to "[l]oose [w]aste," Limpiex is "required to clean up and remove all spillage and/or littering caused by [its] operations."  *Id.*

### D.  The Government's Actual Exercise of Control over Limpiex

In briefing this motion, the Government submitted a declaration from Enrico Caruso, the GSA Field Office Manager responsible for supervising the building manager of One Bowling Green on the date of Ms. Lopez's alleged accident.  ECF No. 32, Decl. of Enrico Caruso ("Caruso Decl.").  Mr. Caruso attests that "the GSA did not routinely direct, supervise or exercise control over Limpiex's day-to-day janitorial and custodial duties" and that "the GSA in no way controlled how Limpiex implemented its janitorial and custodial practices (specifically including cleaning of the loading areas, garages, ramps, driveways, and exterior areas) on a daily or any other routine basis."  Caruso Decl. ¶ 7.

## II.    STANDARD OF REVIEW UNDER RULE 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The determination of whether the Court has subject matter jurisdiction "is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir. 2008)).

Plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova*, 201 F.3d at 113. "While the Court must accept as true all factual allegations in the complaint, the court may not draw any jurisdictional inferences in favor of the plaintiff." *Squicciarini v. United States*, No. 12-cv-2386 (ER), 2013 WL 620190, at *3 (S.D.N.Y. Feb. 15, 2013) (citations omitted). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (brackets omitted) (quoting *Shipping Fin. Servs. Corp v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998)). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider evidence outside the pleadings and make findings of fact. *Makarova*, 201 F.3d at 113.

## III.   ANALYSIS

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (internal quotation marks and ellipses omitted) (quoting *United States v. Mitchell,* 445 U.S. 535, 538 (1980)). The FTCA "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Id.* at 85 (quoting *Hamm v. United States,* 483 F.3d 135, 137 (2d Cir. 2007)). Specifically, the FTCA waives the sovereign immunity of the United States with respect to:

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). "[T]he FTCA directs courts to consult state law to determine whether the

government is liable for the torts of its employees." *Liranzo*, 690 F.3d at 86 (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)).  Because plaintiff alleges that the negligent act or omission that caused her accident occurred in New York, the source of substantive liability for her FTCA claim is New York law.

The Government argues that Ms. Lopez fails to meet her burden of establishing subject matter jurisdiction because the "independent contractor exception" to the FTCA applies.  Plaintiff concedes that Limpiex was "an independent contractor who was responsible for cleaning the area of plaintiff's accident on the date in question," but nevertheless argues that dismissal for lack of subject matter jurisdiction is inappropriate because she "alleges theories of negligence attributable directly to the United States."  ECF No. 60, Mem. Of Law in Opp'n to the United States of America's Mot. to Dismiss ("Pl.'s Opp'n Br."), at 1.

### A. Independent Contractor Exception

As noted, the FTCA waives the Government's sovereign immunity only for suits arising from injuries caused by negligent acts or omissions of "any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  Because the definition of an "employee" under the FTCA specifically excludes "any contractor of the United States," as a general rule courts have no jurisdiction to entertain claims seeking to hold the federal government liable for injuries caused by its independent contractors.  *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) (per curiam) (quoting 28 U.S.C. § 2671); *see also id.* ("Thus, as a general rule, sovereign immunity precludes suits against the United States for injuries caused by its independent contractors."); *Fisko v. U.S. Gen. Servs. Admin.*, 395 F. Supp. 2d 57, 62 (S.D.N.Y. 2005) ("If the injuries alleged in a complaint were caused by an independent contractor, the FTCA does not waive sovereign immunity for that claim, and it must be dismissed for lack of subject matter jurisdiction." (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)).

As the parties agree, it is clear that Limpiex acts as an independent contractor with respect to its duties under the Contract.  To distinguish an independent contractor from an employee, courts evaluate whether the government has retained the power to "control the detailed physical performance of the contractor," *Logue v. United States*, 412 U.S. 521, 528 (1973), or to supervise its "day-to-day operations." *Orleans*, 425 U.S. at 815.  The determination of whether a person or entity is an independent contractor is a question of federal law that is "appropriately resolved by looking at the language of the contract between the Government and the contracting entity, in order to determine whether the contract provides for detailed day-to-day supervision of the contractor's physical performance, or rather grants the contractor autonomy in the performance of his work." *Korotkova v. United States*, 990 F. Supp. 2d 324, 328 (E.D.N.Y. 2014).  "The government can require compliance with federal standards and contract specifications without being deemed to have day-to-day control." *Crippen v. Nelson Realty*, 572 F. Supp. 87, 88 (E.D.N.Y. 1983) (citing *Orleans*, 425 U.S. at 815-16).

Here, the Contract makes clear that the Government has not retained the power to control the day-to-day detailed physical performance of Limpiex's work.  Rather, the Contract unambiguously assigns that responsibility to Limpiex.  *See, e.g.*, Smith Decl. Ex. A, at 92 ("The contractor shall provide all management, supervision, labor, materials, equipment and supplies necessary to meet all janitorial and related services quality requirements as described herein."); *id.* ("The contractor is to determine the optimal work schedule, frequency, resource allocations and performance methods."); *id.* at 93 ("The contractor shall arrange for satisfactory supervision of the contract work. . . .  It is the policy of GSA that Government direction or supervision of contractor's employees directly or indirectly, shall not be exercised.").

To be sure, the Government retains a contractual right to inspect Limpiex's work to ensure compliance with contractual requirements.  *See* Smith Decl., Ex. A, at 100-02.  But this does not

constitute the kind of detailed control that converts an independent contractor into a federal employee for purposes of the FTCA.  *See Roditis*, 122 F.3d at 111 ("[T]he government's retention of a right to inspect . . . does not convert a contractor into a federal employee."); *Lipka v. United States*, 369 F.2d 288, 291 (2d Cir. 1966) ("Reservation of the power to control a contractor's compliance with the contract's specifications does not make the contractor an employee.").

Even the relatively detailed provisions in the Contract concerning the duties of "contract inspectors" are insufficient to bring Limpiex within the definition of an "employee."  The analogous case of *Basher v. United States*, No. 5:92-cv-186 (JAC), 1995 WL 646343 (D. Conn. Mar. 14, 1995) is instructive.  There, the plaintiff brought a claim against the United States after he slipped and fell on oil-soaked leaves on a ramp behind a courthouse.  The GSA had entered into a contract with a private cleaning company that contained provisions concerning the "contracting officer" and "contract inspectors" that are nearly identical to the provisions in the Contract at issue here.  *Id.* at *1.  The court held that it lacked subject matter jurisdiction because the cleaning company was an independent contractor, explaining:

> The contract unambiguously delegates to Paisley both the duty to clean around the courthouse as well as the right to determine how that cleaning is to be achieved, within certain pre-established guidelines set forth in the contract. Neither the contracting officer nor the contract inspectors have any authority to micromanage Paisley's performance of its contractual duties.  On the contrary, the contracting officer supervises only the "administration" of the contract, and the inspectors can only "inspect" Paisley's work and demand compliance with the contract terms.  Under the only reasonable interpretation of the contract, the government does not have authority to control the detailed physical performance of the contractor, making Paisley an independent contractor for purposes of the Federal Tort Claims Act.

*Id.* at * 2 (Cabranes, C.J.) (internal citation omitted).  The same analysis applies here.  Under the Contract, the Government retains the power to inspect and test Limpiex's work against the requirements of the Contract, and even to require Limpiex to re-perform its work if it is found to be deficient.  However, as in *Basher*, the Contract here did not give the contracting officer or the

contract inspectors authority to micromanage Limpiex's performance of its contractual duties. Thus, the Court holds that Limpiex was an independent contractor rather than an "employee" within the meaning of the FTCA.

The parties also agree that Limpiex was responsible for cleaning the driveway on which Ms. Lopez allegedly slipped and fell. *See* Pl.'s Opp'n Br. at 1. The Court agrees. The Contract provides that Limpiex must keep loading areas "clean and free of trash, debris, and foreign matter," and "free of grease, tar, oil spots, etc." Smith Decl., Ex. A, at 150. It also provides that "[g]arages, [r]amps and [d]riveways" shall be kept "free of all paper, trash, empty bottles and other discarded materials. Grease, tar and oil shall not be allowed to permeate concrete surfaces." *Id.* Limpiex is also required to keep "[e]xterior [a]reas," including "sidewalks and parking areas," free of "paper, trash, bottles and other discarded materials." *Id.* at 151.

In sum, Limpiex was acting as an independent contractor on the date of Ms. Lopez's accident, and the responsibility for maintaining and cleaning the area in question fell within the scope of duties delegated to Limpiex under to the Contract. Accordingly, Ms. Lopez's claim against the United States is precluded by the FTCA to the extent she seeks to hold the Government liable for any negligent acts or omissions of Limpiex.

### B. Allegations of Direct Negligence

Ms. Lopez contends that the Court has subject matter jurisdiction over her claim against the Government because her complaint "alleges theories of negligence attributable directly to the United States," namely: (1) "that the Government created the condition through negligent maintenance and repair of the vehicles or equipment by the Government's employees" and (2) "that the slippery condition that [she] slipped on was a recurring condition that originated from inside of the subject premises from a vehicles [sic] or from equipment that Limpiex was not responsible for and that the United States was responsible for the repair and maintenance of." Pl.'s Opp'n Br. at 1-2. She

further contends that these theories are actionable under the FTCA because, under New York law, "a defendant is liable for injuries caused by a slip and fall where the defendant created the hazardous condition leading to a slip and fall, or where the defendant had actual or constructive notice of the condition." *Id.* at 8. [4]  For its part, Limpiex contends that the Government's motion to dismiss should be denied "because the Government has not demonstrated that the alleged dangerous condition was not caused or created by employees of the government."  ECF No. 61, Mem. of Law in Opp'n to the United States of America's Mot. to Dismiss, at 2.

As an initial matter, any attempt to hold the Government liable as the owner of One Bowling Green for a nondelegable duty to ensure the safety of the property is precluded by the FTCA.  *See Roditis*, 122 F.3d at 111-12 (holding that the FTCA does not waive sovereign immunity for claims premised on state-law nondelegable duties).  Therefore, the Court would lack jurisdiction over Ms. Lopez's claim to the extent it relied solely on the Government having actual or constructive notice of a slippery condition on the driveway that Limpiex was responsible for cleaning and keeping oil-free under the Contract.  *See, e.g.*, *Hentnik v. United States*, No. 02-cv-9498 (DC), 2003 WL 22928648, at *7 (S.D.N.Y. Dec. 10, 2003) (Chin, J.) (explaining that government's notice of unsafe condition is irrelevant, because any failure to take corrective action does not create liability where the government has delegated matters of safety and repair to an independent contractor); *Squicciarini*, 2013 WL 620190, at *6 (explaining that government could not be held liable for failing to notify independent contractor of dangerous condition, because all responsibility for grounds maintenance and prevention of accidents had been delegated to independent contractor).[5]

---

[4] Although the Government briefed the issue of negligent selection and supervision of Limpiex, Ms. Lopez has clarified and conceded that she is not pursuing those theories of liability.  Pl.'s Opp'n Br. at 9.

[5] This conclusion may differ in circumstances in which the Government has unique knowledge of the dangerous condition.  *See, e.g.*, *Squicciarini*, 2013 WL 620190, at *6 n.13; *Diaz v. U.S. Postal Serv.*, No. 02-cv-8892 (NRB), 2003 WL 21767530, at *3 (S.D.N.Y. July 31, 2003); *Suro v. United States*, 107 F. Supp. 2d 206 (E.D.N.Y. 2000).  That is not the case here.  Based upon Ms. Lopez's allegations and the duties delegated to Limpiex under the Contract, Limpiex should have known about the slippery condition on the driveway and was responsible for keeping it clean.  *Cf. Diaz*, 2003 WL

What remains, then, is Ms. Lopez's theory that the United States is liable because an unspecified employee or employees "created" the slippery condition.  Under New York law, a defendant may be held liable for negligence if (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the plaintiff was injured as a result of that breach.  *Tuthill v. United States*, 270 F. Supp. 2d 395, 398 (S.D.N.Y. 2003); *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981).  In slip-and-fall cases in particular, a landowner may be held liable if "a defective condition existed and [] the landowner affirmatively created the condition or had actual or constructive notice of its existence."  *See, e.g.*, *Walsh v. Super Value, Inc.*, 904 N.Y.S.2d 121, 125-26 (App. Div. 2010).  The notice requirement is typically "irrelevant in 'creation' cases . . . because an owner who creates a dangerous or defective condition usually knows about it.  But not always."  *Id.* at 125 (internal citation omitted).

In an attempt to show that the Government created the slippery condition, Ms. Lopez alleges the following:

- The "slippery condition originated from, including but not limited to, certain equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities inside of the premises located at One Bowling Green."  TAC ¶ 35.

- The "slippery condition was a recurring condition caused by the aforesaid equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities inside of the premises located at One Bowling Green."  TAC ¶ 57.

- "The equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities inside of the premises located at One Bowling Green that the aforesaid slippery condition originated from were exclusively under the ownership, control, operation, management, repair and maintenance of the Defendant, United States."  TAC ¶ 36.

- Limpiex "had no ownership, control, operation, management, repair responsibilities and maintenance responsibilities relating to the equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities inside of the premises located at One Bowling Green."  TAC ¶ 37.

21767530, at *3 ("Without notification from the Government, the contractor in *Suro* had no knowledge that the child was present in the apartment.  Here, in obvious contrast, based on the current allegations [the contractor] not only should have known about the melting snow under the scaffolding, but also was responsible for its accumulation through the negligent construction or maintenance of the scaffolding.").

- Limpiex "had no contractual responsibilities to inspect, operate, manage, maintain or repair the equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities inside the premises located at One Bowling Green that the aforesaid slippery condition originated from." TAC ¶ 38.

- The "equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities . . . were dangerous and/or defective due to the carelessness, recklessness and negligence of the Defendant, United States, its agents, servants, and/or employees, in the inspection, operation, management, maintenance, ownership, repair and control of same." TAC ¶ 58.

- The "slippery condition was the result of spillage of oil, grease and/or fluid caused and created exclusively by the Defendant, United States, its agents, servants, and/or employees." TAC ¶ 62.

### 1.  The Correct Mode of Analysis

At the outset, the Court notes that it has been presented with a procedural wrinkle.  The Government attached affidavits to its reply brief that, when considered together with relevant provisions of the Contract, tend to disprove Ms. Lopez's broad allegations.  For example, the Government attaches a supplemental declaration by GSA Field Office Manager Enrico Caruso attesting that there is no machinery located inside the loading area in question other than a trash compactor that is provided, used, maintained, and cleaned by Limpiex.  ECF No. 63, Suppl. Decl. of Enrico Caruso ¶¶ 7-8, 10.  Caruso also attests that, although the loading area has a "garage door," there is in fact no garage at the loading area.  *Id.* ¶ 5.  "The vehicles that use the loading area bays at One Bowling Green are not government-owned vehicles."  *Id.* ¶ 6.  Instead, the loading area is used only by "privately-owned delivery trucks and by privately-owned garbage trucks for trash and solid waste disposal and/or removal."  *Id.*

As noted earlier, a defendant is permitted to submit evidence outside of the pleadings on a 12(b)(1) motion.  However, where a defendant does so, the plaintiff is entitled to present her own evidence in response before the Court makes any factual findings.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (explaining that, when a defendant makes a "fact-based 12(b)(1)

motion, proffering evidence beyond the Pleading," plaintiffs must then "come forward with evidence of their own to controvert that presented by the defendant" if it "reveal[s] the existence of factual problems in the assertion of jurisdiction."). Here, because the Government did not attach these affidavits to its opening brief, Ms. Lopez was deprived of her opportunity to submit her own contradictory evidence.

Further, many courts have held that it is improper to make factual findings if a defendant's jurisdictional challenge implicates facts relating to the elements of the plaintiff's cause of action; rather, the proper course of action is to "find that jurisdiction exists and deal with the objection as a direct attack on the merits of plaintiff's case" under either Rule 12(b)(6) or Rule 56. *Brown v. United States*, No. 92-cv-82S, 1994 WL 319015, at *4 (W.D.N.Y. June 8, 1994) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981)); *see also, e.g., Albert v. Carovano*, 824 F.2d 1333, 1338 (2d Cir. 1987) (treating a jurisdictional challenge as "an attack on the merits of the claim pursuant to Rule 12(b)(6)" where the "contested basis of federal jurisdiction," namely, whether defendants acted under color of state law, was "also an element of plaintiff's asserted federal claim"); *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 378-79 (S.D.N.Y. 2002), *aff'd*, 385 F.3d 159 (2d Cir. 2004) (explaining that, when parties submit evidence outside the pleadings on a 12(b)(1) motion and when "jurisdiction is so intertwined with the merits that its resolution depends on resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment"); *Makarova v. United States*, No. 97-cv-4748 (LAP), 1999 WL 58693, at *2 (S.D.N.Y. Feb. 5, 1999) (same)); *cf. Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116-17 (2d Cir. 2003) (affirming dismissal "not under Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction, as the district court did, but rather under Fed. R. Civ. P. 12(b)(6), for failure to state a claim" because the factual issue was "sufficiently intertwined with the merits of the RICO claim that such a rule would turn the underlying merits questions into jurisdictional issues").

Unlike the question of whether Limpiex is an "employee" or an independent contractor, the question of whether Government employees themselves engaged in acts or omissions of negligence is not only intertwined with the merits of Ms. Lopez's cause of action—it *is* the merits. Accordingly, it is appropriate to address the Government's objection to Ms. Lopez's direct negligence theory under Rule 12(b)(6).[6, 7]

## 2.   Analysis Under Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 544).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

---

[6] Even when the contested basis of jurisdiction is also an element of the cause of action, a claim may be dismissed for lack of jurisdiction when it "appears to be immaterial and made solely for the purpose of obtaining jurisdiction." *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 152-53 (2d Cir. 1984) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1945)). The Court observes that Ms. Lopez added most of her allegations concerning direct negligence only after the Government moved to dismiss her Second Amended Complaint for lack of subject matter jurisdiction. The Court need not determine whether those allegations are "immaterial and made solely for the purpose of obtaining jurisdiction," however, because the Court is dismissing her claim on other grounds.

[7] In its reply brief, the Government contends that Ms. Lopez would not be prejudiced by a conversion of the Government's 12(b)(1) motion to one under Rule 12(b)(6) because Ms. Lopez had effectively briefed the issue of whether her complaint stated a claim of direct negligence in her opposition brief. ECF No. 62, Reply Mem. of Law in Supp. of Mot. to Dismiss, at 7. The Court agrees. *See, e.g., Fraternal Order of Police, Nat'l Labor Council, USPS No. 2 v. U.S. Postal Serv.*, 988 F. Supp. 701, 704 n.2 (S.D.N.Y. 1997) (finding no prejudice from the conversion of a Rule 12(b)(1) motion into one under Rule 12(b)(6) because the plaintiffs had fully briefed whether they stated a claim).

at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)

(per curiam).  However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice.'  A complaint must therefore contain more
> than 'naked assertion[s] devoid of further factual enhancement.'  Pleadings that
> contain 'no more than conclusions . . . are not entitled to the assumption of truth'
> otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-

79).  A complaint that offers "labels and conclusions" or "naked assertion[s]" without "further

factual enhancement" will not survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

550 U.S. at 555, 557).

Ms. Lopez's Third Amended Complaint fails to state a claim of direct negligence by

government employees.  Those allegations that are critical to establishing that employees of the

Government created a dangerous condition are simply too conclusory and speculative to warrant the

assumption of truth.  In particular, Ms. Lopez alleges that some unspecified "equipment,

appurtenances, paraphernalia, receptacles, vehicles and/or facilities" behind the large garage door at

7 Bridge Street "were dangerous and/or defective due to the carelessness, reckless and negligence of

the Defendant, United States, its agents, servants, and/or employees, in the inspection, operation,

management, maintenance, ownership, repair and control of same" and that this allegedly

"dangerous and/or defective nature" is what caused the "slippery condition."  TAC ¶¶ 58-59.

The imprecision of Ms. Lopez's shotgun allegations about what lurks behind the garage door

suggests that they are the product of speculation.  But setting that aside, the allegation that this

unspecified object was "dangerous or defective" due to the Government's "carelessness,

recklessness and negligence" is precisely the sort of "naked assertion" and "conclusory statement"

that cannot be credited on a 12(b)(6) motion.  Indeed, Ms. Lopez pleads no facts regarding the

nature of the alleged dangerous or defective condition, nor does she plead any facts to support her legal conclusion that the Government acted with "carelessness, recklessness and negligence" and that would allow the Court to infer that the Government departed from the duty of care that it owed.  *See Ojeda v. Metro. Transp. Auth.*, No. 16-cv-003 (VB), 2016 WL 6208576, at *2 (S.D.N.Y. Oct. 24, 2016) (stating that complaint contained "only conclusory allegations and threadbare recitals of various types of negligence" where plaintiff alleged that he "sustain[ed] severe and disabling injuries by the reason of the negligence, carelessness, recklessness of the defendant" in "failing to provide plaintiff with an appropriate and timely backup" and "failing to equip and/or provide plaintiff with a suitable, appropriate and/or timely transport for his arrestee" (alteration in original)); *Lefevre v. Cnty. of Albany*, No. 14-cv-155, 2015 WL 1626005, at *5 (N.D.N.Y. Apr. 13, 2015) (holding that plaintiff's "conclusory allegations that defendants 'were negligent' are not entitled to the presumption of truth").

Similarly, Ms. Lopez's allegations that the "slippery condition" was "caused by" the "equipment, appurtenances, paraphernalia, receptacles, vehicles and/or facilities" and that the "slippery condition was the result of spillage of oil, grease and/or fluid caused and created exclusively by the Defendant, United States, its agents, servants, and/or employees" are precisely the sort of "[t]hreadbare recitals" of an element of a cause of action, "supported by mere conclusory statements" that the Supreme Court has held "do not suffice."  *See Iqbal*, 556 U.S. at 678-79; *Koehler v. Metro. Tranp. Auth.*, No. 16-cv-0003 (ADS), 2016 WL 6068810, at *5 (E.D.N.Y. Oct. 14, 2016) (holding that allegation that the "[P]laintiff . . . was caused to sustain severe and disabling injuries by the reason of the negligence, carelessness, recklessness of the [D]efendant" was a "bare conclusion[]" without sufficient factual support" (alternations in original)).

Stripped of these conclusory allegations, the complaint does not allege a claim of direct negligence by Government employees that "raise[s] a right to relief above the speculative level."  *See*

*Twombly*, 550 U.S. at 555.  Accordingly, Ms. Lopez's complaint must be dismissed for failure to state a claim to the extent that it proceeds on that theory.

## IV.    LIMPIEX'S CROSSCLAIMS

The reasons underlying the dismissal of Ms. Lopez's claim against the Government apply with equal force to Limpiex's crossclaims for common law contribution and indemnification.[8]  To the extent that Limpiex's crossclaims are premised on activities delegated to Limpiex under the Contract, the Court lacks subject matter jurisdiction over them.  *See Squicciarini*, 2013 WL 620190, at *6 ("Since the independent contractor exception applies to and deprives this Court of subject matter jurisdiction over Plaintiff's FTCA claim, the Court also lacks jurisdiction over Brickman's cross-claim."); *see also Trico Dev. Assocs. L.P. v. O.C.E.A.N., Inc.*, No. CIV. A. 10-2847 (MLC), 2010 WL 3614214, at *4 (D.N.J. Sept. 8, 2010) ("The contribution claim cannot stand because the United States has not waived its sovereign immunity on the underlying claims." (internal quotation marks, bracket, and citation omitted)).

To the extent that Limpiex's crossclaims are premised on direct negligence by Government employees, Limpiex pleads no non-conclusory factual allegations beyond those contained in Ms. Lopez's Third Amended Complaint, and the crossclaims must therefore be dismissed for failure to state a claim.

## V.    PLAINTIFF'S CLAIM AGAINST LIMPIEX

Although the Court dismisses all claims against the Government, subject matter jurisdiction remains over Ms. Lopez's claim against Limpiex on the basis of diversity of citizenship.  *See* TAC ¶¶ 16, 18 (alleging Ms. Lopez is a citizen of New York and Limpiex is a "foreign" corporation with its principal place of business in Connecticut); TAC ¶¶ 15 (alleging damages of $2,500,000).

---

[8] Limpiex concedes as much, stating in its opposition brief that it "agrees with the Government that if plaintiff's claims against the Government are dismissed, then Limpiex's Cross-Claims for common law indemnity and contribution cannot survive."  ECF No. 61, at 5.

## VI.     CONCLUSION

For the foregoing reasons, the Government's motion to dismiss Ms. Lopez's FTCA claim and Limpiex's crossclaims is GRANTED.  Ms. Lopez's claim against the United States and Limpiex's crossclaims against the United States are dismissed.  Insofar as those claims are premised on activities delegated to Limpiex under the Contract, they are dismissed without prejudice for lack of subject matter jurisdiction.  *Cf. Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").  Insofar as the claims are premised on acts by employees of the Government, they are dismissed with prejudice for failure to state a claim.  Ms. Lopez has already amended her complaint three times, and "[t]hree bites at the apple is enough."  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Salinger v. Projectavision, Inc.,* 972 F. Supp. 222, 236 (S.D.N.Y. 1997)).

The Clerk of Court is directed to remove the United States from the caption of this case and to terminate the motion pending at Dkt. No. 49.

SO ORDERED.

Dated:  December 6, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge